**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| DALE PIERSON )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NATIONAL INSTITUTE FOR LABOR RELATIONS )<br>RESEARCH AND STAN GREER )<br>)<br>Defendants. )<br>)<br>) | Case No. 16 CV 00449<br><br>Judge Philip P. Simon<br><br>Magistrate Judge John E. Martin |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## PROCEDURAL POSTURE

Plaintiff initially filed his action for defamation in the Circuit Court of Cook County, Illinois, a jurisdiction with no relationship to the matter at issue, on September 11, 2015. The action was removed to the Northern District of Illinois on December 9, 2015. Immediately thereafter, the matter was dismissed by the Honorable Ruben Castillo on December 14, 2015, without prejudice to the filing of a timely motion to remand or a properly amended federal complaint. Plaintiff filed a motion to remand, which was denied. Plaintiff then filed an amended complaint. Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Court granted the 12(b)(2) portion of the motion finding that it lacked personal jurisdiction. Thereafter, plaintiff re-filed the action in the Northern District of Indiana on October 18, 2016. He served Defendants on January 17, 2017, the final day on which service would be permitted under FRCP 4. Defendants now seek dismissal pursuant to 12(b)(6) for various reasons as set forth below.

## **RELEVANT ALLEGATIONS AND FACTS**

Dale D. Pierson ("plaintiff") is a resident of Illinois and currently employed as General Counsel to Local 150 of the International Union of Operating Engineers, AFL-CIO, headquartered in Countryside, Illinois, where he has worked for almost 14 years. (Doc. No. 1, Compl. ¶ 2.) Plaintiff has practiced labor and employment law since 1982. *Id.* at ¶ 3. He taught labor law as an adjunct professor at Northern Illinois University Law School in 2004 and 2005, and frequently speaks on labor and employment law topics at professional conferences throughout the country. *Id.*

Defendant National Institute for Labor Relations Research ("NILRR") is "a non-profit research facility analyzing and exposing the inequities of compulsory unionism." NILRR maintains its principal office at 5211 Port Royal Road, Suite 510, Springfield, Virginia 22151. (Compl.¶ 4). NILRR maintains a website at www.nilrr.org. *Id.*

According to plaintiff, shortly after Indiana passed its "Right-to-Work" law in 2012, he served as lead counsel in a lawsuit challenging its constitutionality entitled, *Sweeney, et al. v. Daniels*, Case No. 12 CV 00081, filed in this Court. (Doc. No. 1 Compl. at ¶ 6). The District Court dismissed the suit without prejudice to re-filing certain claims. *Sweeney v. Daniels*, 2013 WL 209047 (N.D. Ind., Jan. 17, 2013). *Id.* The *Sweeney* plaintiffs (or "Union plaintiffs") appealed the dismissal of their federal claims to the Seventh Circuit, which affirmed. *Id.* Meanwhile, the Union plaintiffs re-filed their claims in Lake County, Indiana, in the case titled, *Sweeney, et al. v. Zoeller*, Case No. 45D01-1305-PL-52. *Id.* ¶ 7. On September 5, 2013, the Lake County Superior Court denied the State of Indiana's Motion to Dismiss and found the Indiana Right-to-Work law unconstitutional. *Id.* Thereafter, the Indiana Attorney General appealed that decision to the Indiana Supreme Court in the case entitled, *Zoeller v. Sweeney*, No. 45S-1309-PL-00596 ("Underlying Appeal"). *Id.*

According to plaintiff, throughout the Underlying Appeal and aforementioned litigation, the Union plaintiffs argued that "Right-to-Work" laws were fundamentally unfair. *Id.* ¶ 8. Plaintiff

advocates that federal law requires unions to represent fairly all employees in any given bargaining unit regardless of their membership in the union. *Id.* He alleges that Right-to-Work laws permit individual employees to refuse to pay their fair share of the costs, allowing such employees to ride for free on the work of the union paid for by their coworkers. *Id.* According to plaintiff, proponents of Right-to-Work laws argue that unions need not represent employees that do not pay, and that unions could represent only those employees who want such representation. (Doc. No. 1 Compl. ¶ 9).

Plaintiff alleges that "[t]he 'minority representation' argument is a fallacy". *Id.* ¶ 10. According to the plaintiff, the National Labor Relations Act (NLRA) does not provide an alternative to majority status representation. *Id.* Plaintiff alleges that National Labor Relations Board (NLRB) jurisprudence makes it clear that "the essence of industrial democracy [in the United States], as contemplated and enforced by the [NLRA], is fundamentally based on majoritarian principles." [citation not included]. *Id.*

On September 4, 2014, the Indiana Supreme Court heard oral argument in the Underlying Appeal. Plaintiff made the aforementioned arguments to the Indiana Supreme Court. (Doc. No.Compl.¶ 11). A copy of the transcript of the hearing is attached hereto as Exhibit A.[1] On September 12, 2014, defendants posted an article on NILRR's website entitled "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court". The entire post reads as follows:

> Currently, the top bosses of two unions, the United Steelworkers (USW) and Local 150 of the International Union of Operating Engineers (IUOE), have cases before the Indiana Supreme Court in which they are trying to get Right to Work protections for Hoosier employees approved by state legislators two-and-a-half years ago judicially overturned.
>
> In a petition filed with the National Labor Relations Board seven years ago, lawyers for one of these two unions, the USW, acknowledged without qualification that, under Section 7 of the

---

[1] In addition, the hearing can be viewed at the following address: https://mycourts.in.gov/arguments/ [Search by Keyword *Zoeller*]. An electronic copy has been purchased by the defendant and can be made available to the Court if necessary.

> National Labor Relations Act (NLRA), in any workplace where no union is recognized as employees' "exclusive" bargaining agent, employees' right to bargain with their employer through a union "remain[s] available and protected, though on a nonexclusive basis, thus applicable to union members only."
>
> As anyone who has a good understanding of federal labor statutes and court precedents knows, the union lawyers for the USW brass, along with the officers of six other AFL-CIO-affiliated unions who signed on to the petition ("In the Matter of Rulemaking Regarding Members-Only Minority-Union Collective Bargaining"), were absolutely correct about the permissibility of members-only bargaining in 2007. And they are still correct today.
>
> How can it be, then, that Dale Pierson, the top lawyer for the other union seeking to overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials' representing only those who join and pay dues "is not a legal possibility"? (A video of the oral arguments in which Pierson claimed again and again that "the law does not allow members-only representation" is available at the end of the link below.)
>
> The answer is, quite simply, that Pierson flat-out lied. Evidently, he and the IUOE bosses for whom he is working agree that, if the Indiana Supreme Court acknowledges the truth about the permissibility of members-only bargaining as an alternative to monopoly bargaining for union officials, their anti-Right to Work case must fail. And therefore last week Pierson simply denied a truth that even his fellow assailants on Indiana's Right to Work law, the USW union hierarchy, have openly acknowledged in public legal documents.
>
> Because Thomas Fisher, the lead attorney representing Indiana as it defends its Right to Work law from the IUOE Local 150 brass, knows full well about the U.S. Supreme Court precedents, such as the 1938 Consolidated Edison v. NLRB ruling, that explicitly affirm that members-only bargaining is legal under the NLRA, and reminded the Indiana Supreme Court justices about them, it is unlikely that Pierson and his paymasters are going to get away with lying about federal labor law. But the fact that Pierson was willing to do it, and IUOE Local 150 kingpins were evidently willing to sign off on such a strategy, illustrates just how desperate they are to reinstate forced union dues and fees in Indiana. (A true and correct copy attached hereto as Exhibit B).

According to plaintiff, the above post was false.

Plaintiff alleges that the NILRR post also refers to "a petition filed with the National Labor Relations Board seven years ago." (Doc. No. 1, Compl. ¶ 14). The post asserts that in the petition ("2007 petition") lawyers for the Steelworkers union "acknowledged without qualification that, under Section 7 of the National Labor Relations Act (NLRA), in any workplace where no union is recognized as employees' 'exclusive' bargaining agent, employees' right to bargain with their employer through a union 'remain[s] available and protected, though on a non-exclusive basis, thus applicable to union members only.'" *Id*.; 2007 Petition attached hereto as Exhibit C.

According to plaintiff, the NILRR post fails to acknowledge that the 2007 petition was denied by the NLRB on August 26, 2011. (Doc. No. 1, Compl. ¶ 15.) Plaintiff further alleges that

4

the 2007 petition asked the NLRB to adopt a rule that would require an employer "to bargain collectively with a labor organization that represents less than an employee-majority with regard to the employees who are its members, but not for any other employees." *Id.* Plaintiff alleges the petitioners recognized that such "members only" bargaining was <u>not</u> recognized by the NLRB, and filed the petition, they said, so that employees would be "permitted to return to the exercise of the right to begin organizing and bargaining through unions that represent their members only." *Id.* The Board denied the 2007 petition, in part, because it called for "a significant reinterpretation" of the NLRA, and necessarily a devotion of "substantial" Board resources which it was not prepared to make. *Id.* Though unclear, it appears that plaintiff is alleging that defendants' misinterpreted the intent behind the 2007 petition. Plaintiff does not appear to suggest that the position taken by the Union in the 2007 petition was misstated by Defendants in the post. Rather, plaintiff appears to be attempting to justify the inconsistency between the 2007 petition and his subsequent oral advocacy.

In any event, plaintiff cannot deny that, during oral argument before the Indiana Supreme Court, referenced in the complaint, he made the statement referenced in the post. Exh. A, pp. 28, 29 and 32 ("that is a fallacy"), ("the law does not allow members only representation, that's the bottom line that is not an option"), ("a members only unit is not a legal possibility").  Likewise, plaintiff cannot deny that the 2007 petition, as referenced in the complaint and attached hereto, contains the language referenced in the post[2]. He also cannot deny that his statements that members-only bargaining is impermissible, a fallacy or legally impossible are not supported by legal statute or precedent. The Indiana Supreme Court did not rule in favor of the Union. Indeed, the Court expressly disagreed with the Union's argument:

> The Union responds that "[c]hoosing to represent members-only bargaining units is not an option under the [National Labor Relations Act]" because the "[National Labor Relations Board] will not process a representation petition by a union seeking a

---

[2] He also admits, during oral argument, that he has taken, on at least one occasion, a stance inconsistent with the position that members-only representation is a fallacy. Exh. B, pp. 29-30.

5

members-only bargain[ing]unit" and "a union that proposes to represent a minority of the bargaining unit has no remedy if the employer refuses to bargain with it." We disagree. *Zoeller v. Sweeney*, 19 N.E.3d 749, 2014 Ind. LEXIS 893 (Ind. 2014).

## STANDARD OF REVIEW

In reviewing the sufficiency of a complaint under Federal Rule 12(b)(6), a district court must accept all well-pleaded facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must merely provide "a short and plain statement of the claim," which is sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S., 544, 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). Thus, a plaintiff "must plead some facts that suggest a right to relief that is beyond the speculative level." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## ARGUMENT

I. **DEFAMATION CLAIM SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6).**

   A. **The statements made in the posting at issue are substantially true, precluding suit.**

Substantial truth is an absolute defense to a claim of defamation. *Bull v. Bd. of Trs. of Ball State Univ.*, 2012 U.S. Dist. LEXIS 61342, at *24, 2012 WL 1564061, at *9 (S.D. Ind. May 2, 2012). "Under the Constitution, literal truth is not required; it is sufficient if the statement is substantially true."*Heeb v. Smith*, 613 N.E.2d 416, 421 (Ind. Ct. App. 1993). Thus, it "is sufficient that the substance, 'the gist' or 'the sting' of the statement is true. The test for determining whether a

6

statement is substantially true is whether any inaccuracies caused the statement to produce a different effect on the audience than would have been produced had the literal truth been spoken." *Id.* (citations omitted). The First Amendment enshrines "the national commitment to the free exchange of ideas." *Journal Gazette Co. v. Bandido's, Inc.*, 712 N.E. 2d 446, 456 (Ind. 1999).

The rule of substantial truth is based on recognition that falsehoods which do no incremental damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects. *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993). In *Haynes*, the Court found that a news report that contains a false statement is actionable only when significantly greater opprobrium results from the report containing the falsehood than would result from the report without the falsehood. *Id.* Even when the plaintiff in a defamation suit is not a public figure, the Supreme Court insists in the name of the First Amendment that, unless the author is deliberately lying or is recklessly indifferent to the truth or falsity of what he says, the plaintiff must prove actual harm in order to recover damages. *Id.* Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable. *Id.*

The defense of substantial truth has been applied in numerous cases involving the publishing of an article. See, *Journal-Gazette* [*supra*]. Likewise, courts in the Seventh Circuit have considered the specific term "lied" in various contexts, finding that it can be deemed substantially true. *See, Bone v. City of Layfayette*, 919 F.2d 64, 67 (7th Cir. 1990) (defendant "might have picked a kinder, gentler and more informative phrase" than "she lied", but it was substantially true.); *Greene v. City of Neillsville*, 2009 U.S. Dist. LEXIS 65489, 2009 WL 2341807 (W.D. Wis. July 29, 2009) (statement that plaintiff lied on time cards was substantially true as "slight inaccuracies of expression" do not make a statement defamatory).

Here, the statements made by Greer in the posting are substantially true. It is important to appreciate that Greer is not attacking plaintiff in his posting, but rather pointing out an inconsistent

7

position that has been maintained by Unions in their various advocacy efforts. Arguably, the post read in its entirety, as it should be, reflects that the statements are not really directed at the plaintiff but rather at the entire opposition, including the union "bosses for whom [plaintiff] is working", "USW brass", "fellow assailants"/ "paymasters", and "Local 150 kingpins" who signed off on the "strategy." The title refers to the "Union Lawyer", not Dale Pierson. Though his name is referenced, his personal information and place of business are never identified. Viewed in its entirety, the "lies" or "untruth" comments are not directed at plaintiff the individual, but rather at the legal "strategy" of those who benefit from the position, a "strategy" that the "Local 150 kingpins" evidently "**sign[ed] off on**" lest their "anti Right to Work case . . . fail."

In addition, the posting does not attack plaintiff as a person but rather criticizes one specific action taken by plaintiff. Again, the focus is really on the plaintiff as agent of the Union. Greer uses the term "lies" referring to a specific occasion and pointing to specific contradictory positions taken on a highly contentious issue that support his assessment. Greer does not call the plaintiff a liar. At most, the post, specifically the alleged defamatory statements, refers to a singular action of the plaintiff (notably acting at the behest of his Union); it does not define or attempt to define a character trait of the plaintiff (i.e. plaintiff is a "liar").

Importantly, plaintiff never denies the content of the 2007 petition and his oral statement and/or that this content was somehow misconstrued in the posting. Plaintiff never denies, nor can he, that he stated that it is a "legal impossibility" for a Union to represent only those who join and pay dues, i.e., its members. He admits that the 2007 Petition maintained a position to the contrary. Exhibit C, pp. 30-31. He cannot deny that legal precedent does not bolster the position he took during the oral hearing. Indeed, even the Indiana Supreme Court expressly questioned and disagreed with plaintiff's statements made at oral argument regarding the legal impossibility. *Zoeller v. Sweeney*,

8

19 N.E.3d 749, 753, 2014 Ind. LEXIS 893 (2014). Further, case law calls into question plaintiff's statements made to the Indiana Supreme Court.

The statements made by Greer are substantially true. While there may have been more artful ways to point out the contradictory/questionable statements made by plaintiff, (perhaps use of plaintiff's term "fallacious"), "lied" is substantially true and highlights the irritation Greer felt at the blatantly contradictory positions maintained by the Unions. Regardless, plaintiff cannot show, as required by *Haynes* [*supra*], that had Greer been slightly more generous in his assessment of the plaintiff/union's actions at the oral hearing (perhaps using terms like inconsistent, contradiction or disingenuous) a significantly lesser degree of opprobrium or harm would have been done to him and/or it would have produced a different effect upon the audience. As explained above, it is difficult to ascertain any harm that has resulted to the plaintiff (See Section C). Plaintiff's complaint does not and cannot overcome these deficiencies.

### B. The statements in the posting are at most rhetorical hyperbole constitutionally protected opinion.

Neither an opinion that does not misstate actual facts, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695 (1990) nor rhetorical hyperbole, *Hamilton v. Prewett*, 860 N.E. 2d 1234, 1244 (Ind. Ct. App. 2007) constitute defamation. *Naylor v. Rockford Park Dist.*, 1999 U.S. Dist. LEXIS 12664, 1999 WL 626762, at *4 (N.D. Ill. July 14, 1999) (noting that statement calling someone a liar can be non actionable opinion); *Skolnick v. Correctional Med. Servs.*, 132 F. Supp. 2d 1116 (N.D. Ill. 2001)(letter accusing plaintiff of misrepresentation and "deliberate deception" found to consist of "strong language that is mere rhetoric and hyperbole" thus not defamatory); P*aterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1135 (W.D. Wash. 2007) ("snitch," "squealer," and "liar," may be considered "abusive opinion," but not actionable as defamation). Whether a statement qualifies as

constitutionally protected speech under the First Amendment is a matter of law for the court to decide. *Milkovich* at 17.

Indiana courts have consistently found statements such as the one at issue rhetorical hyperbole and, as such, non actionable. *Shepard v. Schurz Communs., Inc.*, 847 N.E.2d 219, 223, 225 (Ind. Ct. App. 2006) (statement made by opposing counsel that other counsel "is a liar" and "His statement is false" deemed rhetorical hyperbole incapable of being proved true or false by newspaper); *Eversole v. Spurlino Materials of Indianapolis*, LLC, 804 F. Supp. 2d 922, 937 (S.D. Ind. 2011) (commenting about several cases holding defamation claims to be deficient, including calling the employee a "deadbeat and a crook," a "stupid son of a bitch," a "big fat oaf," and a "damn liar."); *Levee v. Beeching*, 729 N.E.2d 215, 220, 2000 Ind. App. LEXIS 812 (Ind. Ct. App. 2000) (union representative calling school principal a "liar" and stating that she "favored some staff" not defamatory *per se*).

Here, plaintiff and defendants have divergent views in a heated debate regarding a matter of public concern that has been and continues to be in the political and public arena. *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 586 (7th Cir. 1992) (noting that "right to work" legislation is matter of public concern); *Harris v. Quinn*, 134 S. Ct. 2618, 2658 (2014) (dissent) ("[f]or many decades, Americans have debated the pros and cons of right-to-work laws... All across the country and continuing to the present day, **citizens have engaged in passionate argument** about the issue and have made disparate policy choices.")(emphasis supplied); See *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (describing the plaintiff as a "crank" is "basically just a colorful and insulting way of expressing disagreement with his master idea, and it therefore belongs to the language of controversy rather than to the language of defamation"); *Saenz v. Playboy Enterprises, Inc.*, 653 F. Supp. 552, 567 (N.D. Ill. 1987) ("A reader of criticism expects rhetorical hyperbole and vivid metaphor, so

the use of lively language is understood as hyperbole and metaphor, not as fact"), *aff'd,*841 F.2d 1309 (7th Cir. 1988).

Both parties have monitored the issue closely and have passionate positions. Greer has followed it so closely that he was able to identify an inconsistent position taken by the Union in the statements made by plaintiff and in the 2007 petition (again an inconsistency never denied by plaintiff and only unconvincingly argued away). Greer uses the terms "lies", "denies a truth" and "kingpins", while plaintiff alleges that the opposing view is "fallacious" and states that certain persons are "free-riders". Regardless of diction and whether it could be more artful, the language between the parties is equally charged. With regard to the allegations in the matter *sub judice*, Greer's statement is one of rhetoric imputed not solely to plaintiff, but to the strategy of the opposition - a strategy that he believes is disingenuous, unsupported by the law and even inconsistently applied by the Unions. *Arthur v. Offit,* 09-CV-1398, 2010 U.S. Dist. LEXIS 21946, *12 (E.D. Va. Mar. 10, 2010)("she lies" rhetorical hyperbole as nature of debate was "rough and tumble" and involved an "emotional and highly charged debate about an important public issue" in which parties had "diametrically opposed views" and readers could expect "emphatic language"); *Farber v. Jefferys*, 33 Misc. 3d 1218(A), 941 N.Y.S 2d 537, 2011 WL 5248207, at 13 (1st Dept. 2011) ("liar" deemed rhetoric in the context of "a heated public debate" and attempt to "discredit rival").

Likewise, plaintiff's inability to avoid arguing his own impassioned opinion through allegations in the complaint – even when the allegations offer no substance to his claim - only reinforces the intense nature of the debate. Against this contextual backdrop, Greer's declaration that the plaintiff, at the bequest of the Union, "lied" or "denied a truth" is not a fact or a personal criticism, but rather an outpouring of exasperation and intellectual outrage directed at the clearly contradictory positions taken by – not plaintiff – but rather the Unions at the oral argument and in the previously filed 2007 petition. See, *Steinhilber v. Alphonse*, 68 NY2d 283, 294, 501 N.E.2d 550

(1986) ("[e]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, *heated labor dispute*… in which an audience may anticipate epithets, fiery rhetoric or hyperbole."). Such statements are protected.

### C. Plaintiff has not pleaded actual damages or a pecuniary injury.

To establish defamation under Indiana law, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Sheets v. Birky*, 54 N.E.3d 1064, 1070, 2016 Ind. App. LEXIS 155, at *9, 2016 WL 2902735 (Ind. Ct. App. 2016). Indiana is a defamation *per se* state. *Id.* However, Indiana courts have indicated that calling someone a "liar" is not, by itself, defamatory *per se* as it is not "so obviously and naturally harmful that proof of [its] injurious character can be dispensed with." *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000). Greer did not call plaintiff a liar in the post, rather he indicated that plaintiff "flat out lies" in a specific instance. The term "flat out lies," in the context used, would not be defamatory *per se* pursuant to *Levee*.

Thus, plaintiff will have to plead and prove special damages. *Gibson v. Kincaid*, 140 Ind. App. 186, 190 (1966); *Tacket v. Delco Remy*, 937 F.2d 1201, 1205 (7th Cir. 1991) ("libel *per quod* under Indiana law requires that both extrinsic defamatory facts and special damages be pleaded and proved"). Humiliation and embarrassment alone are not sufficient to plead a prima facie case of defamation. *Martino v. W. & S. Fin. Group,* 715 F.3d 195, 207 (7th Cir. 2013). Rather, special damages are pecuniary in nature and "are not assumed to be necessary or inevitable but must be shown by allegation and specific proof to have been actually incurred as a natural and proximate consequence of the wrongful act". *Foxworthy v. Buetow*, 492 F. Supp. 2d 974, 987 (S.D. Ind. 2007) citing *Lovings v. Thomas*, 805 N.E. 2d 442 (Ind. Ct. App. 2004).

Indiana is clear that the statements at issue are not defamation *per se*. Thus, plaintiff must plead actual damages of a pecuniary nature. Here, plaintiff has not set forth any specific pecuniary

12

injury in his complaint at law for his claim to survive. Indeed, it is difficult to infer what pecuniary injuries plaintiff could have possibly sustained.  He alleges that he is General Counsel for the Operating Engineers Union.  His position, and secondary work, clearly reflects advocacy solely for unions. It is hard to infer how criticism from an entity taking a contradictory position to labor unions harms his reputation with said unions and, in turn, results in financial injury.  If anything, ability to spark the ire of the opposition would be deemed an asset or at least a testament to his union credentials.

### D.  Plaintiff has not pleaded actual malice

In addition to actual damages, plaintiff must plead actual malice. In Indiana defamation actions, the court applies the actual malice standard for matters of general or public concern, irrespective of whether the allegedly defamed plaintiff was a public or private individual. *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 452, 1999 Ind. LEXIS 409 (Ind. 1999). "If a matter is subject [sic] of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety." *Id.* Malice cannot be deduced by mere publication alone. *Journal-Gazette*, 712 N.E. at 462. The actual malice element required by the United States Supreme Court and Indiana state courts is not to be confused with the ordinary definition of "malice" as an evil intent or motive arising from spite or ill-will. *Shine v. Loomis*, 836 N.E.2d 952, 954 (Ind. Ct. App. 2005). Actual malice, as an element of the tort of defamation, exists when the defendant publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not. *Id.* "Reckless disregard" of whether a statement is false or not is more than mere negligence. *Id.*

Bare allegations that a defendant acted maliciously are not sufficient; the plaintiff must allege facts from which actual malice may be inferred. *Hoffman v. Roberto*, 578 N.E.2d 701, 709, 1991 Ind. App. LEXIS 1563, at *20-21 (Ind. App. 1991); *Lee v. Radulovic*, 1994 U.S. Dist. LEXIS 12887, at *6, 1994 WL 502844 (N.D. Ill. Sept. 12, 1994). Indiana law requires "clear and convincing evidence" of actual malice. *Bull v. Bd. of Trs. of Ball State Univ.*, 2012 U.S. Dist. LEXIS 61342, at *24, 2012 WL 1564061 (S.D. Ind. May 2, 2012); *Journal Gazette* [*supra*] at 456 ("judges as expositors of the constitution have a duty to independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of judgment that is not supported by clear and convincing proof of actual malice"). Significantly, Indiana courts specifically acknowledge that a plaintiff does not speak with actual malice when the statements had "a substantial basis in the truth". *Brandom v. Coupled Prods.*, LLC, 975 N.E.2d 382, 390, 2012 Ind. App. LEXIS 476, at *21, 2012 WL 4320221 (Ind. App. 2012).

Here, plaintiff, an attorney for the Union who works in high profile settings and, as alleged in his complaint, "frequently speaks on labor and employment topics at professional conferences throughout the country" (Doc. No. 1 ¶ 3), has defined himself as a public, even national, figure at least for the limited purpose of labor law. Indeed, he has sought publicity for this issue. Regardless of his status as a public figure, plaintiff cannot deny that the posting and the alleged defamatory speech concerns a matter of public concern – i.e., the Right to Work law being argued before a public body. Plaintiff has not pleaded any allegations showing that the statements at issue were made with actual malice, nor can he given that the post correctly reports on his oral argument as set forth above.

### E. The statements made in the posting are protected by qualified/ common interest privilege.

A qualified privilege rebuts the element of malice and protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (1992). The privilege exists because of "the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty." *Kelley v. Tanoos*, 865 N.E.2d 593, 597-98 (2007). The question of whether a statement is protected by the qualified privilege is a matter of law. *Chambers v. American Trans Air, Inc.*, 577 N.E.2d 612, 615 (Ind. App. 1991).

The posting at issue clearly speaks to a matter of public issue, in which author Greer and his organization had an invested interest, as alleged by plaintiff.  The qualified privilege is applicable.  Given the substantial truth of the statement and the limited context in which it was made (i.e., a specific position taken by a Union), this Court should find the statements made by Greer privileged as a matter of law.  See, *Williams v. Tharp*, 914 N.E.2d 756, 766 (Ind. 2009) (applying privilege to person not "so obviously mistaken as to support a reasonable inference that he had lied"); *Gagan v. Yast*, 966 N.E.2d 177, 181-182, 2012 Ind. App. LEXIS 162, *11, 2012 WL 1134033 (Ind. Ct. App. 2012) (applying qualified privilege in context where alleged defamer called plaintiff a "liar," a "manipulator," and an "evil person" as defendant felt actions of plaintiff were improper).

### F. Indiana Code 34-7-7-1 et. seq., the Indiana Anti-SLAPP Statute, mandates that this action be dismissed and that defendants receive their attorney fees.

The anti-SLAPP statute, Indiana Code Section 34-7-7-1(a) provides in relevant part:

> "This chapter applies to an act in furtherance of a person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue or an issue of public interest that arises after June 30, 1998."

Section 2 specifies that an "act in furtherance of a person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection

15

with a public issue" includes free speech conduct "in connection with a public issue or an issue of public interest." A "person" is an individual or "any other legal entity." Ind. Code § 34-7-7-4.

Section 5 sets forth the "conditions under which rights of petition or free speech may be used as [a] defense, and provides:

> It is a defense in a civil action against a person that the act or omission complained of is:
>
> (1) an act or omission of that person in furtherance of the person's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Indiana in connection with a public issue; and
>
> (2) an act or omission taken in good faith and with a reasonable basis in law and fact.

Indiana Code Section 34-7-7-7, entitles the prevailing defendant to attorney fees. Ind. Code § 34-7-7-7; *Poulard v. Lauth*, 793 N.E.2d 1120 (Ind. Ct. App. 2003). Substantively, Indiana Code Section 34-7-7-9 does not supplant the Indiana common law of defamation, but provides that the movant must establish that his or her speech was "lawful." Ind. Code § 34-7-7-9(d); *Shepard v. Schurz Communs., Inc.*, 847 N.E.2d 219, 224, 2006 Ind. App. LEXIS 864, 35 Media L. Rep. 1091 (Ind. Ct. App. 2006) (dismissing claim pursuant to Anti-SLAPP when paper published statement that plaintiff was a liar).

For the reasons set forth above, plaintiff's claim has no merit, and is clearly an attempt to retaliate against defendants for their political beliefs and their participation in the governmental process and reporting on said process. This is exactly the type of suit for which the Indiana Anti-SLAPP was designed. This Court should dismiss plaintiff's claim and award defendants their attorney's fees and costs.

Respectfully Submitted,

*/s/ John J. Murphy*

John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
Jmurphy@nzalaw.com

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Memorandum in Support of Their Motion to Dismiss has been electronically filed with the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, by using the CM/ECF system which will send notification of such filing via electronic delivery to attorneys of record on February 7, 2017.

/s/ John J. Murphy
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
Jmurphy@nzalaw.com

Paul Bozych
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
pbozych@nzalaw.com
Jmurphy@nzalaw.com