**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| Dale D. Pierson, | ) | |
| | ) | |
| Plaintiff *Pro Se*, | ) | |
| | ) | Case No. 2:16-cv-00449 |
| v. | ) | |
| | ) | Judge Philip P. Simon |
| National Institute for Labor Relations | ) | Magistrate Judge John E. Martin |
| Research and Stan Greer, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

"Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court," declared the headline to the September 12, 2014 article published by Defendant National Institute for Labor Relations Research (NILRR) (Complaint ¶ 12, doc. #1, at page 4; Defendants' Motion to Dismiss ("MTD") Ex. B, doc. #7-2, page 1). Under Defendant Stan Greer's byline, the article went on to identify Plaintiff Dale Pierson as the "top lawyer for the other union seeking to overturn Indiana's Right-to-Work law," and asserted that in oral argument to the Indiana Supreme Court, "Pierson flat-out lied." (*id.*). Defendants' Motion to Dismiss should be denied because there is nothing more defamatory to a lawyer's professional reputation than to assert that they have lied in open court.

**STATEMENT OF THE CASE**

On September 11, 2015, Plaintiff Pierson filed his Complaint alleging, "defamation *per se,*" in the Circuit Court of Cook County, Illinois. *Pierson v. NILRR*, 2016 WL 6093490 (October 17, 2016). On December 9, 2015, Defendants filed their "Notice of Removal," to the U.S. District

Court for the Northern District of Illinois. *Id.* at *2. After briefing, on October 17, 2016, the Court dismissed the case for lack of personal jurisdiction "WITHOUT PREJUDICE to refiling in a court that has personal jurisdiction over Defendants." *Id.* at *9. Pierson refiled his Complaint in this Court on October 18, 2016 (doc. #1, filed 10/18/16). Defendants filed their Motion to Dismiss ("MTD") on February 7, 2017, but do not raise a Rule 12(b)(2) defense here (doc. #6, filed 02/07/17).

## STATEMENT OF FACTS

Plaintiff Pierson is employed as General Counsel to the International Union of Operating Engineers, Local 150, AFL-CIO (Complaint ¶ 2, doc. #1, filed 10/18/16). He resides and works in Cook County, Illinois, where Local 150's headquarters is located (*id.*). At the direction of the Union, Pierson was principally responsible for preparing Local 150's legal challenges to the Indiana Right-to-Work law passed in 2012 (*id.*).

The NILRR is an arm of the National Right-to-Work Committee (NRTWC) (Complaint ¶ 4; Certification of Dale D. Pierson ("Pierson Cert.") dated March 7, 2017, at ¶ 21). The NILRR maintains a website at which it solicits donations, offers scholarships, and publishes articles (Pierson Cert. ¶¶ 21-22). Neither the NILRR, the NRTWC, nor Greer were parties to these cases.

On January 17, 2013, this Court dismissed the original Right-to-Work case filed by Local 150 and various officers and members. *Sweeney v. Daniels*, 2013 WL 209047 (N.D. Ind. January 17, 2013). The Union appealed this Court's dismissal of its federal claims to the Seventh Circuit in the case ultimately resolved as *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014). Finding it lacked jurisdiction over the Union's claims under the Indiana Constitution, this Court dismissed them without prejudice to refiling in state court. *Daniels*, 2013 WL 209047 at *12-13. The Indiana Trial Court found the "Right-to-Work" law unconstitutional on September 4, 2014, and the State

of Indiana appealed to the Indiana Supreme Court. *Zoeller v. Sweeney*, 19 N.E. 3d 749, 750 (Ind. 2014). After the Indiana trial court found the Right-to-Work law unconstitutional, on September 4, 2014, Pierson argued against the State's appeal in the Indiana Supreme Court (*id.*).

On September 12, 2014, Defendants posted online an article under the headline, "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court" (Complaint ¶ 12, doc. #1 at page 4; MTD Ex. B, doc. #7-2, page 1). That article also refers to "a petition filed with the National Labor Relations Board [NLRB] seven years ago" (Complaint ¶ 14, doc. #1 at page 4). That petition, filed by the United Steelworkers of America, titled, "In the Matter of Rulemaking regarding Members-Only Minority Union Collective Bargaining," asked the NLRB to adopt a rule that would impose upon employers "a duty to bargain collectively with a labor organization that represents less than an employee-majority with regard to the employees who are its members, but not for any other employees" (Complaint ¶ 15, Pierson Cert. ¶ 9(b) and Attachment 2). Defendants then wrote (Complaint ¶ 12, doc. #1 at page 4; MTD Ex. B, doc. #7-2, page 1):

> How can it be, then, that Dale Pierson, the top lawyer for the other union seeking the overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials representing only those who join and pay dues "is not a legal possibility"? (A video of the oral arguments in which Pierson claimed again and again that "the law does not allow members-only representation" is available at the end of the link below.)

> The answer is, quite simple, that Pierson flat-out lied.

Greer's article fails to acknowledge that the NLRB denied the Steelworkers' petition on August 26, 2011 (Complaint ¶ 15, doc. #1 at pages 4-5).

In asking the NLRB to change existing law to allow minority bargaining, the Steelworkers conceded that such "members only" bargaining was <u>not</u> recognized by the NLRB. The Steelworkers filed the petition, they said, so that employees would be "permitted to return to the exercise of the right to begin organizing and bargaining through unions that represent their

members only." (Pierson Cert. ¶ 9(b) and Attachment 2).  The Board denied the petition, in part, because it called for "a significant reinterpretation" of the NLRA (*id.*).  In short, Pierson's statement to the Indiana Supreme Court was an accurate representation of law, and the Defendants knew it.

## ARGUMENT

### I.    The Court Should Deny Defendants' Rule 12(b)(6) Motion to Dismiss.

"A complaint should not be dismissed on a Rule 12(b)(6) motion unless it appears beyond doubt that the plaintiff would be unable to prove a set of facts which would warrant relief." *Quilici v. Second Amendment Foundation*, 769 F.2d 414, 416-417 (7th Cir. 1985).  A 12(b)(6) motion admits well-pleaded allegations, and the court reviews those allegations in the light most favorable to plaintiff. *Id.*  State law controls a tort claim brought in federal court under diversity jurisdiction. *Id., relying on Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).  Under Indiana's "significant contacts" analysis, either Indiana law, or that of Illinois, applies here. *Quilici*, 769 F.2d at 416, citing *Snead v. Forbes*, 2 Ill. App. 3d 22, 26-27 (1st Dist. 1971) (in multi-state defamation cases, the state with the most significant relationship to the case is usually the state in which plaintiff resides).  Under either choice of law, Defendants' Motion to Dismiss fails.

### A.    Pierson Properly Pleads Defamation *Per Se*.

Pierson alleges that defendants posted their September 12, 2014 article intentionally stating he "flat-out lied" to the Indiana Supreme Court, knowing that their statement was false (Complaint ¶¶ 12-14, doc. #1 at page 4).  Under Indiana law, "a statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Dugan v. Mittal Steel USA Inc.*, 929 N.E. 2d 184, 186 (Ind. 2010) (statements imputing occupational misconduct "clearly qualify"

4

as defamation *per se*); *Owens v. Schoenberger*, 681 N.E. 2d 760, 763 (Ind. App. 1997); *accord*, *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10 (1992) ("Statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed.").

Under Indiana law, a statement is defamatory *per se* when it attacks a person's honesty and integrity in their trade or business. *Bell v. Clark*, 670 N.E. 2d 1290, 1294 (Ind. 1996), *expressly adopting and incorporating by reference appellate court opinion*, 653 N.E. 2d 483, 490 (Ind. App. 1995) (letter alleging partner violated partnership agreement by taking out inappropriate loans defamatory *per se*); *Henderson v. Evansville Press, Inc.*, 127 Ind. App. 592, 598 (1957) ("To charge an attorney with being a shyster is defamatory and libelous *per se*"); *see also Local 15, Independent Workers v. IBEW*, 273 F. Supp. 313, 321 (N.D. Ind. 1967) (allegations union officers lied to its members were actionable libel); *Kolegas*, 154 Ill.2d at 10-11 (a statement is defamatory *per se* if it falsely imputes an "inability to perform or want of integrity in the discharge of duties of office or employment;" or, "prejudices a person in his profession or trade."); *Mittelman v. Witous*, 171 Ill. App. 3d 691, 700-701 (1988) (supervising attorney criticism of subordinate lawyer defamation *per se*).

In *Kolegas*, statements which implicitly accused a festival promoter of lying and of attempting to deceive a radio station and the public at large "certainly could be found to have damaged [his] integrity and prejudiced him in his business…" 154 Ill.2d at 12. As the Court explained, "a statement which implies that a professional promoter is promoting a fictitious event undermines the promoter's credibility with the public and thereby damages his professional reputation." *Kolegas*, 154 Ill.2d at 13. Similarly, newspaper editorials claiming a public official

"lied to us" and "lied to [the public]" were libelous *per se* because they imputed to [plaintiff] a want of integrity in discharging the duties of his office." *Costello v. Capital Cities Communications*, 125 Ill.2d 402, 417 (1988); *see also Catalano v. Pechous*, 83 Ill.2d 146, 157-164 (1980) (defendant's statement "240 pieces of silver changed hands" not to be taken literally; it charged aldermen plaintiffs with crime of taking a bribe).

Pierson has practiced labor and employment law, representing unions and employees, for over 34 years (Complaint ¶ 3, doc. 1 at page 1; Pierson Cert. ¶ 3). As the Court observed in *Henderson* (127 Ind. App. at 598):

> In practical contemplation, to say that a lawyer's request for a change of venue…is a form of shysterism is an imputation that in so doing he is resorting to the practices of a shyster. A "shyster," as applied to an attorney, in common understanding means that he is an unscrupulous practitioner who will carry on his legal work in a dishonest way and will resort to sharp and tricky practices to achieve his end and purpose. To charge an attorney with being a shyster is defamatory and libelous per se.

Just as calling a lawyer a "shyster" means he will carry on his legal work in a dishonest way, so too does the statement a lawyer "flat-out lied" to the Indiana Supreme Court undermines his credibility to his clients, the public, and the courts, and damages his reputation. Defendants' statement are defamatory *per se*, and the Court should deny their Motion to Dismiss.

**B.      None of the Defenses Raised Apply Here.**

**1.      Defendants' statements are false.**

Section 9(a) of the NLRA requires unions to demonstrate support from a majority of an employer's employees in any given bargaining unit. 29 U.S.C. § 159(a). Only then is an employer required to bargain with the union as the majority representative of its employees. *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614 (1969); *Linden Lumber Division v. NLRB*, 419 U.S. 301 (1974). It is unlawful for an employer to recognize a union, and for a union to accept recognition, based

upon minority support.  *Ladies Garment Workers Union v. NLRB*, 366 U.S. 731 (1961).  And it is unlawful for unions and employers to negotiate contracts covering only union members.  *See, generally, Amicus Curiae* Brief of Professor Kenneth G. Dau-Schmidt filed in *Zoeller v. Sweeney*, Case No. 45S00-1309-PL-00596 (Pierson Cert. ¶ 12 and Attachment 6).

State "Right-to-Work" laws are permissible under the NLRA.  29 U.S.C. § 164(b).  As this Court observed in *Sweeney v. Daniels*, "the Right-to-Work" label has a nice sound to it, but is misleading."  2013 WL 209047 at *1 (N.D. Ind. January 17, 2013).  "What these types of laws actually prohibit are 'union security clauses,' which are provisions in collective bargaining agreements between labor unions and employers which condition employment on a worker joining the union," or paying a fair share fee.  *Id.*  Unions have argued from their inception that "Right-to-Work" laws unfairly require dues-paying union members to subsidize the representation of "free-riders," who enjoy the benefits of union representation but pay nothing for them.  *Communications Workers of America v. Beck*, 487 U.S. 735, 748-749 (1988) (in abolishing the closed shop, Congress was "equally concerned" with the problem of "free-riders" in the passage of the Taft-Hartley Act; as Senator Taft put it, "no one can get a free ride in" a union shop).  This is so because once a union achieves majority support, it becomes the exclusive representative of bargaining unit employees, and owes all of them a duty of fair representation regardless of union membership.

To reconcile this principle of "majority rule" with the protection of minority rights, the Supreme Court recognized the "duty of fair representation."  In *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944), the Court held that as the exclusive representative of an employer's employees, the union had the duty to represent all the members of a bargaining unit "without hostile discrimination, fairly, impartially, and in good faith."  As the Court later explained in *DelCostello v. Teamsters*, 462 U.S. 151, 164 n.14 (1983):

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative.

Once a majority of the employees in any given bargaining unit have elected a union as their bargaining agent, the union is compelled to represent all of them fairly regardless of whether they are union members. *Machinists v. NLRB*, 133 F.3d 1012, 1015 (7th Cir. 1998).

When asked by the Indiana Supreme Court whether unions could represent only their members and thereby avoid the free-rider problem, Pierson said, "the law does not allow members-only representation" (Defendants' Ex. A, Transcript of Proceedings at 29, doc. #7-1 at page 8). Pierson's answer accurately stated current federal labor law as interpreted and applied by the NLRB and the federal judiciary. He pointed out to the Court that Local 150 filed a representation petition with the NLRB in Indianapolis while the legislature debated the Right-to-Work law, seeking a "members-only" unit, which the Board dismissed. *Id.* at 29-32, doc. 7-1 at page 8. He also relied on *Amicus* briefs explaining that "members-only" units are ineffectual under current NLRB law and do not exist in actual workplaces (Pierson Cert. ¶ 12 and Attachments 4-5).

Defendants argue that their statements are "substantially true," and therefore not defamatory (MTD ¶ 3(1), doc. #6 at page 2; Memorandum of Law ("Memo") doc. #7 at page 7-8). They also argue that, "It is important to appreciate that Greer is not attacking Plaintiff in his posting, but rather pointing out an inconsistent position that has been maintained by unions in their various advocacy efforts." (*id.* at 7-8).

Defendants' argument that their "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court" article is substantially true because it was "not attacking plaintiff" (Defendants' Memorandum at 7, doc. #7 at page 7), is ridiculous. It identifies only Plaintiff

"Dale Pierson, the top lawyer" for Local 150 (Complaint ¶ 12, Exhibit A, doc. #1 at page 4), and attaches a video of Pierson's argument (*id.*). It identifies only Pierson personally, six times in a six-paragraph article, stating he "flat-out lied" and "denied a truth," attributing "lying" to the Court to "Pierson and his pay masters" (*id.*).

Nor is the NILRR's current spin—that the Greer article simply sought to point out "inconsistencies" in the unions' positions—any less disingenuous. First, Pierson's characterization of minority unions as a legal impossibility and the Steelworkers' petition are not inconsistent. Both start from the same premise—that under current, well-established labor law, "minority unions" are unlawful. Pierson and his client have offered no opinion as to the desirability of a change in the law or the historical support for such a change. The Steelworkers' 2007 petition advocates for a change in Board law, offering Professor Morris's analysis of the NLRA's history and the evolution of the Labor Movement. But the point remains: the Steelworkers petitioned the Board to change the law—to use its rulemaking authority to allow unions to negotiate enforceable contracts based upon less-than-majority employee support. Obviously if Greer's libel that "Pierson flat-out lied" to the Indiana Supreme Court was not itself a lie, the Steelworkers' petition would be unnecessary. Greer did lie—the law does not allow minority representation—it did not when the Steelworkers petitioned for a change, and it does not now since the Board denied the petition. Even if Pierson's argument and that of the Steelworkers were inconsistent, this most recent post-hoc explanation for Greer's falsehood is phony. Nowhere in his article does Greer make this "inconsistency" argument, and indeed, nowhere in the article is the word "inconsistent" even found.

The real inconsistency in the arguments over the viability of minority unions as these cases wound their way through the Indiana and federal courts was that made by the Indiana Attorney

General.  At the oral argument conducted September 12, 2013, before the United States Court of

Appeals for the Seventh Circuit, counsel for the State of Indiana admitted that unions could not

limit their representation to members only (*Sweeney v. Daniels*, Case No. 13-1264, Oral Argument

Transcript at 28):

> 8     MR. STEINER:        Well, we're actually taking the
>
> 9     position that any payment [to the Union] can be prohibited in a
>
> 10    Right-to-Work state.
>
> 11    THE COURT:          Right. And so you want the union
>
> 12    to be forced by federal law to render services but
>
> 13    precluded by Indiana law from getting any payment
>
> 14    for the services it's rendering.  It is not allowed
>
> 15    to represent a subset of the workers at a place who
>
> 16    happen to be union members.
>
> * * *
>
> 20    THE COURT:          You agree with that?  Do you agree
>
> 21    with that on –
>
> 22    MR. STEINER:        I agree, yeah.

"An attorney's clear and unequivocal admission of fact during an opening statement constitutes a

judicial admission that binds the client."  12 West's *Indiana Law Encyclopedia*, "Evidence" § 63

"Judicial Admissions" at 502 (Thomson West 2009); *McCaskill v. SCI Management Corp.*, 298

F.3d 677, 680 (7th Cir. 2002) ("verbal admission…at oral argument is a binding judicial

admission, the same as any other formal concession made during the course of proceedings.").

Despite this admission, the Indiana Supreme Court erroneously accepted the Attorney General's reversal of position. *Zoeller v. Sweeney*, 19 N.E. 3d 749, 753 (Ind. 2014).[1]

Defendants' argument their article is substantially true is invalid. The test of substantial truth is whether the alleged defamatory statement was more damaging to Pierson's reputation, in the mind of the average listener, than a truthful statement would have been. *Journal-Gazette Company, Inc. v. Bandido's, Inc.*, 712 N.E. 2d 446, 457 (Ind. 1999). Again, Greer knew that it was his own statement that was false, not Pierson's, because of his explicit reliance on the Steelworkers' NLRB petition to change the law to recognize minority unions. But even if he was simply too sloppy to recognize the petition's significance, he and the NILRR cannot claim substantial truth. If as he now claims he intended to convey Pierson's statement was simply inconsistent with that of the Steelworkers, he could have said that. Or he could have said he "respectfully disagreed" with Pierson's advocacy, and maybe would have an opinion defense. Or even if he said Pierson's statement was false (setting aside for a moment it was not), he could arguably claim he had taken a contrary position. Instead, Greer said, without any qualification, that Pierson "flat-out lied" (not even just "lied") to the Indiana Supreme Court. That statement is plainly different from the alternatives he offers now, and is plainly "more damaging" to Pierson's reputation than a truthful statement would have been. But even if Defendants' statements are "susceptible to both defamatory and non-defamatory meanings, the matter of interpretation should be left to the jury." *Bandido's*, 712 N.E. 2d at 457.

---

[1] The Indiana Supreme Court's error in *Zoeller*—"the Union's federal obligation to represent all employees in a bargaining unit is optional…"—is highlighted by its sole statutory citation to 29 U.S.C. § 158(a): The Court's parenthetical states, "It shall be an unfair labor practice for an employer…(5) to refuse to bargain collectively with the representatives of his employees, *subject to the provisions of Section 159(a) of this Title*." (Emphasis added). Section 159(a) requires unions to establish majority support. Absent majority support, there is no employer duty to bargain with the union—one reason why minority unions do not exist in the real world. *Gissel Packing Co.*, 395 U.S. at 614.

### 2.   The assertion that Pierson "flat-out lied" to the Indiana Supreme Court was not protected opinion and/or rhetorical hyperbole.

Defendants next argue that their statements are "at most rhetorical hyperbole constitutionally protected opinion" (MTD ¶ 3(2), doc. #6 at page 2; Memo, doc. #7 at page 9). They again argue that their statements were "not really directed at" Pierson, "the individual, but rather the Local 150 legal strategy" (Memo at 8, doc. #7 at page 8); and claims Greer's statement Pierson "flat-out lied" was "not a fact or a personal criticism, but rather an outpouring of exasperation and intellectual outrage directed at the clearly contradictory positions taken by—not Plaintiff—but rather the Unions at the oral argument and in the previously filed 2007 petition." (Memo at 11, doc. #7 at page 11).

In clinging to this baseless argument which appears nowhere in Greer's article, Defendants correctly point out that opinion or rhetorical hyperbole is non-defamatory if it "does not misstate actual facts" (Memo at 9, doc. #7 at page 9).  Defendants' argument therefore fails at the outset. As pointed out, *supra*, there is no way to construe Greer's article as not being directed at Pierson. They also play fast and loose with the facts with respect to the oral argument before the Indiana Supreme Court by stating that Greer's article was all about the "contradictory positions taken by…the *Unions* at the oral argument and in the previously filed 2007 petition" (Memo at 11, doc. #7 at page 11).  Although Local 150 and the Steelworkers both prevailed in separate trial court actions in their constitutional challenges to the Indiana Right-to-Work law, it was only Local 150's case which was argued before the Indiana Supreme Court on September 4, 2014, and in which the Steelworkers did not participate (Memo, Ex. A at 1, doc. #7-1 at page 1).

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990), the Supreme Court held that the First Amendment did not "create a wholesale defamation exemption for anything that might be labeled 'opinion.'"  In that case, the defendants published an article accusing a high school's

wrestling coaches of lying under oath about an incident at one of his team's wrestling matches.  *Id.* at 3.  The article repeatedly asserted that the high school lied its way out of trouble, and that the coaches specifically "lied at the hearing after each having given his solemn oath to tell the truth." *Id.* at 4-5.  As the Court explained (*id.* at 21):

> This is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury.  Nor does the general tenor of the article negate this impression.
>
> We also think the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false.

The Court added that the "dispositive question" then becomes "whether a reasonable factfinder could conclude that the [allegedly defamatory statements] could imply that petitioner Milkovich perjured himself in a judicial proceeding.  We think this question must be answered in the affirmative." *Id.*

Hence, "the fact that a statement is phrased in the form of an opinion does not cloak it with first amendment protection.  Even when presented as apparent opinion or rhetorical hyperbole, a statement may constitute actionable defamation." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 397 (2008).  "Statements which <u>can</u> reasonably be construed as asserting facts" are not constitutionally protected opinion. *Kolegas*, 154 Ill.2d at 15 (emphasis in original).  The assertion that Pierson "flat-out lied" to the Indiana Supreme Court can only reasonably be construed as asserting facts and is therefore <u>not</u> protected opinion.

Defendants' argument that there has been "heated debate" and "passionate positions" on "both sides" over Right-to-Work laws is irrelevant, nor does the article reference any such "heated debate" (Def. Memo at 11).  Defendants made a factual assertion that Pierson lied to the Indiana Supreme Court.  Defendants' effort to recast their assault on Pierson's integrity as merely

"spot[ting] an inconsistent position" is itself untrue.  As discussed *supra*, the Steelworkers' NLRB petition argued that the law should be <u>changed</u> to allow for members-only bargaining (Pierson Cert. ¶ 9(b) and Attachment 2).  Defendants' admission that Greer "has followed [the issue]…so closely" (Def. Memo at 11) concedes that he knew his assertion Pierson "flat-out lied" was itself false.  The question should be left to the trier of fact.

### 3.    Defendants conceded Pierson plead actual and/or special damages when they relied on his allegations to establish diversity jurisdiction.

Defendants next argue that "the alleged defamatory statements at issue…have not caused pecuniary injury to" Pierson (MTD ¶ 3(3), doc. #6 at page 2).  They argue that stating Pierson "flat-out lied" to the Supreme Court is not defamation *per se*, requiring him to plead both actual damages of a pecuniary nature (Memo at 12, doc. #7 at page 12).  As Pierson argued *supra*, however, Greer's egregious attack on his truthfulness necessarily damages his integrity and impugns his reputation in the legal community.  Hence, Pierson properly pleads defamation *per se*.

Alternatively, in their Notice of Removal filed December 9, 2015, in the Northern District of Illinois, Defendants asserted that the federal court has diversity jurisdiction over the parties in part because "Plaintiff specifically quantifies the amount of damages as in excess of $50,000.00 with punitive damages in excess of $500,000.00." (Notice of Removal ¶¶ 7-8, Pierson Cert. ¶ 16).  In this case, Pierson alleges the amount in controversy exceeds $75,000.00 (Complaint ¶ 1, doc. #1 at page 1); that he has suffered damage to his personal reputation (*id.* at ¶ 17, doc. #1 at page 5); and seeks "actual damages of $50,000.00" (*id.*, doc. #1 at page 6).  Defendants cannot now assert in their Motion to Dismiss—where all well-pled facts must be taken as true—that Pierson has not adequately pled special damages.

14

**4.        Pierson is not a public figure, limited or otherwise.**

Next, Defendants argue that the statement Pierson "flat-out lied" to the Indiana Supreme Court was "not made with actual malice" (MTD ¶ 3(4), doc. #6 at page 2).  In support of this contention, Defendants return to their position that Pierson as a public figure addressed a matter of public concern in his oral argument, and failed to plead "actual malice"—that is, Defendants published their statements with knowledge of falsity or reckless disregard to whether they were true (Memo at 13-14, doc. #7 at page 13-14).  This argument similarly fails at the outset.

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the U.S. Supreme Court held that a public official cannot prevail in a libel action without proof their allegedly defamatory statements were made with "actual malice."  Actual malice is defined as "knowledge of [the statement's] falsity or in reckless disregard of whether it was false or not."  *Indianapolis Newspapers, Inc. v. Field*, 254 Ind. 219, 245 (1970); *Catalano*, 83 Ill.2d at 155.  It is this "actual malice" proof which is also required of limited public figures and to overcome claims of privilege.  *See, e.g., Kuwik*, 156 Ill.2d at 24-25.

Pierson alleges that Defendants made the statement he "flat-out lied" on their website "with knowledge of their falsity or reckless disregard for their truth" (Complaint ¶ 14, doc. #1 at page 4).  Defendants know that Pierson was not lying when he called minority/members-only bargaining a "legal impossibility," because they relied in their article on the very petition brought to the NLRB to <u>change</u> the law to allow minority members-only bargaining (Complaint ¶ 15, doc. #1 at page 4-5; MTD Ex. B, doc. #7-2 at page 1).  In rejecting it, the NLRB said again that to permit members-only bargaining would require a "significant reinterpretation" of the NLRA (*id.*; Pierson Cert. ¶ 9(b) and Attachment 2).  That is, a departure from longstanding, well-settled principles at the core of the federal labor relations structure established by the NLRA.

Pierson's Complaint plainly alleges that "Defendants made the statements and published them knowing that they were false" (Complaint ¶ 13, doc. #1 at page 4); and that "at all relevant times, the Defendants knew, or should have known, that the statements above were not true (Complaint ¶ 16(b), doc. #1 at page 5.  Moreover, Pierson alleges that Defendants knew or should have known that Greer's article stating Pierson had lied is false because the article itself relies on the petition the Steelworkers filed with the National Labor Relations Board seeking to change the law to permit minority members-only unions.  A cursory reading of that petition shows that in 2007, the Steelworkers were advancing a position that would have changed existing law, a position rejected by the NLRB in 2011, long before the oral argument before the Indiana Supreme Court (Complaint ¶¶ 8-10, 14-15, doc. #1 at page 3-5).

Defendants argue that Pierson is a limited purpose public figure because he speaks at professional conferences on labor and employment topics and that Right-to-Work laws are a matter of public concern (Memo, doc. #7 at page 14).  However, Pierson is not a public figure, or even a limited public figure as that term has been defined by the United States Supreme Court.  In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974), the Court held that a private attorney who participated in a litigation solely related to his representation of a private client was not a public figure.  *Id.* at 351-352.  Despite the fact the attorney was well-known in some circles due to his involvement in local civic groups and professional organizations and publication of books and articles on legal subjects, the attorney did not "thrust himself into the vortex of [the] public issue, nor did he engage the public's attention in an attempt to influence its outcome."  *Id.*  Indiana law on the issue of limited public figures adheres to the Supreme Court's *Gertz* analysis, in *Beeching v. Levee*, 764 N.E.2d 669 (Ind.App.Ct. 2002), citing the *Gertz* premise that "[i]t is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an

16

individual's participation in the particular controversy giving rise to the defamation.  *Id.* at 352. Here, Pierson acted as a private attorney representing a private client before the Indiana Supreme Court, and although he has spoken on the topic on light of his experience through the litigation, he has not thrust himself into the vortex of the issue in an effort to influence the outcome.  Pierson merely has represented his client as any private attorney would do.

>        **5.       There is no qualified privilege for Defendants' defamatory statements.**

Defendants next argue that their alleged defamatory statements are privileged under Indiana law (MTD ¶ 3(5), doc. #6 at page 2).  They argue that their postings are "protected by qualified/common interest privilege" because it "clearly speaks to a matter of public issue, in which author Greer and his organization had an invested interest" (Memo at 14-15, doc. #7 at page 14-15).

This is yet another misstatement.  Defendants and their parent, NRTWC, support state Right-to-Work laws generally.  Their only interest in members-only bargaining is to insist falsely that it exists, in order to counter arguments unions are forced to represent free-riders without compensation.  In any event, that is not an "interest" recognized by Indiana courts as warranting a qualified privilege.

Indiana recognizes "two distinct rationales" for holding certain communications qualifiedly privileged.  *Kelley v. Tanoos*, 865 N.E. 2d 593, 597 (Ind. 2007).  Neither applies here. The first rationale is the "well established common interest privilege that protects communication made in connection with membership qualifications,…employment references,…intracompany communications,…and the extension of credit."  *Id.* at 597-598 (citations omitted).  The second is the "public interest privilege" which may protect statements to law enforcement officers to report criminal activity or private individuals which further the same ends.  *Id.* at 599-600.

17

Even if Defendants could assert a qualified privilege, they have abused it. A defamation defendant loses the protection of the qualified privilege if it acts with ill will, engages in an "excessive publication" of the statement, or makes the statement without grounds for belief in its truth. *Bell*, 670 N.E. 2d at 1294 (qualified privilege rebutted by evidence defendant "acted without regard for the truth, acted with malice and for a dishonest purpose"). The question of whether the qualified privilege has been abused is one for the jury. *Owens*, 681 N.E. 2d at 764 ("extremely negative tenor" of letter demonstrates lack of good faith).

Here, Defendants wantonly ignored that the NLRB's Decision on August 26, 2011, is fully consistent with its previous decisions rejecting the "members-only minority bargaining" issue. *See., e.g., Dick's Sporting Goods*, Case No. 6-CA-34821 (June 22, 2006) ("The essence of industrial democracy, as contemplated and enforced by the [NLRA], is fundamentally based on majoritarian principles."); (Pierson Cert. ¶ 9(b) and Attachment 1 at p. 18). The parties and various *amici* fully presented this jurisprudence to the Indiana Supreme Court (Pierson Cert. ¶ 12 and Attachments 4, 5, 6), all of which was certainly known to Defendants. Their dishonest purpose and actual malice disqualify them from reliance on any qualified privilege.

## II.    Defendants State No SLAPP Claim.

Defendants have offered nothing to show that dismissal is appropriate under the "Defense in Civil Actions Against Persons Who Act in furtherance of the Person's Right of Petition or Free Speech Under the Constitution of the United States or the Constitution of the State of Indiana in Connection with a Public Issue." Ind. Code § 34-7-7-1. Such statutes are commonly referred to as "anti-SLAPP" laws—Strategic Litigation Against Public Participation.

To challenge a lawsuit as a SLAPP, Defendants need to show that the plaintiff is suing for an act or omission "in furtherance of [your] right of petition or free speech under the Constitution

18

of the United States or the Constitution of the State of Indiana in connection with a public issue or

an issue of public interest." Ind. Code § 34-7-7-5 (1). Defendant also needs to establish that their

action was 'taken in good faith and with a reasonable basis in law and fact." Ind. Code § 34-7-7-

5-(2).

      As explained *supra*, Defendants' malicious libels were neither taken in good faith, nor

reasonably based in law and fact. Malicious libel, moreover, enjoys no constitutional protection.

*Milovich*, 497 U.S. at 21. And as the Supreme Court explained in *Garrison v. Louisiana*, 379 U.S.

64, 75 (1964):

> That speech is used as a tool for political ends does not automatically bring it under
> the protective mantle of the Constitution. For the use of the known lie as a tool is
> at once at odds with the premises of democratic government and with the orderly
> manner in which economic, social, or political change is to be effected. Calculated
> falsehood falls into that class of utterances which "are no essential part of any
> exposition of ideas, and are of such slight social value as a step to truth that any
> benefit that may be derived from them is clearly outweighed by the social interest
> in order and morality."

Defendants' reliance on *Poulard v. Lauth*, 793 N.E. 2d 1120, 1125 (Ind. Ct. App. 2003), and

*Shepard v. Schurz Communs., Inc.*, 847 N.E. 2d 219, 224 (Ind. Ct. App. 2006), is misplaced. In

*Poulard*, the town council president brought claims for slander, libel, and defamation of character

against a newspaper publisher and against the individual who made statements to the newspaper,

relating to the newspaper's coverage of the town council. The court ultimately held the defendant

newspaper prevailed. In *Shepard*, an attorney brought a defamation action against a newspaper

and town attorney, alleging defamation *per se* from the newspaper's publication of an article,

which quoted the town attorney. On appeal, the Indiana Court of Appeals affirmed the trial court's

award of attorneys' fees to the newspaper. In both cases, the newspaper argued it was simply

reporting newsworthy facts. In this case, it was Defendants themselves who were responsible for

the defamatory statements. They cannot claim anti-SLAPP protection.

## <u>CONCLUSION</u>

For all the above-stated reasons, Plaintiff Pierson respectfully requests the Court to deny

Defendants' Motion to Dismiss in its entirety.

Dated: March 7, 2017                          Respectfully submitted,

                                              By: <u>/s/ Dale D. Pierson</u>
                                              Plaintiff *Pro Se*

Dale D. Pierson *(dpierson@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663; Fx. 708/588-1647

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record, hereby certifies that on March 7, 2017, he electronically filed the foregoing with the Clerk of Court using the CM/CM/ECF system, which sent notification to the following:

Mr. Paul Bozych, *(Paul.Bozych@wilsonelser.com)*
Mr. John J. Murphy *(Jack.Murphy@wilsonelser.com)*
Wilson Elser Moskowitz Edelman & Dicker, LLP
55 West Monroe Street, Suite 3800
Chicago, IL  60603


/s/ Dale D. Pierson
Plaintiff *Pro Se*

Dale D. Pierson *(dpierson@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647