UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DALE PIERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:16 CV 449 |
| | ) |
| NATIONAL INSTITUTE FOR LABOR | ) |
| RELATIONS RESEARCH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on the motion to dismiss filed by defendants, the National Institute for Labor Relations Research and Stan Greer. For the reasons identified below, defendants' motion to dismiss (DE # 6) will be denied.

## I. INTRODUCTION

Plaintiff Dale Pierson ("Pierson"), General Counsel to Local 150 of the International Union of Operating Engineers, AFL-CIO ("the Union"), filed the present defamation claim against defendant National Institute for Labor Relations Research ("NILRR") and defendant Stan Greer ("Greer"), a senior research associate for NILRR. (DE # 1.) NILRR identifies itself as a "non-profit research facility analyzing and exposing the inequities of compulsory unionism." (DE # 7 at 2.) NILRR maintains a website, on which it publishes articles in furtherance of this stated purpose. (DE # 1 at 2.) Pierson's complaint alleges that statements made in an article authored by Greer and published by NILRR constituted defamation *per se*. (*Id.*)

The State of Indiana's passage of "Right-to-Work" legislation in 2012 is at the center of the parties' present dispute. The passage of this law spurred litigation from union-plaintiffs, who argued that the law was fundamentally unfair because it allowed non-member employees to unfairly benefit from the union's representation without paying for their share of that representation. (*Id.* at 3.) Proponents of the legislation, however, argued that unions are not obliged to represent non-member employees. They argued that a union voluntarily assumes the obligation to represent all employees once it obtains majority status – but that it could, in the alternative, choose to represent only those employees who wanted union representation and membership – i.e. "minority representation" or "members-only representation." (*Id.*) It is this disagreement which gives rise to the present litigation.

Pierson argued that minority representation is a legal fallacy during his oral argument before the Supreme Court of Indiana in *Zoeller v. Sweeney*, 19 N.E.3d 749, 750 (Ind. 2014). Pierson, on behalf of the Union, argued that such representation is impossible because (i) the National Labor Relations Board would not process a representation petition by a union that sought to create a "members-only" or "minority" bargaining unit; and (ii) a union that purported to represent only a minority of the bargaining unit would have no recourse if the employer refused to bargain with

it. *Id.* For example, during oral argument Pierson had the following exchange with the Justices of the Supreme Court of Indiana:[1]

> JUSTICE MASSA: Isn't it the union's choice to seek exclusive representation of all the workers?
>
> MR. PIERSON: It is the union's choice and mission to seek representation of workers generally, yes, your Honor, but to the extent that the State suggests that it's a choice between seeking exclusive representation and minority or members-only units, that is a fallacy, there is no choice there, because there is no such thing as a members-only union, not under the Federal scheme. The structure of the Labor Act, consistent case law, the Labor Board's determinations, that system just does not exist.
>
> JUSTICE RUCKER: I'd like to take that a little further because that seems to be synonymous, the debate between your side and the State side. The State says, yes, there can be members only, you say no, there cannot be members only. How crucial is it that there can or cannot be, to your constitution - - your facial constitutional challenge?

---

[1] While neither party addressed this issue, the court notes that it may properly consider the exhibits attached to defendants' motion – the transcript of the oral argument, the copy of defendants' article, and the 2007 Petition – without automatically converting the motion to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Courts have construed Rule 10(c) to extend to consideration of documents referenced, but not attached, to the complaint. *See Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents [under Rule 10(c)] if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (internal citations omitted). Here, the exhibits to defendants' motion were referenced in, and are central to, the complaint, and thus the exhibits may properly be considered in resolving the pending motion.

> MR. PIERSON: Well, it's one of the only ways that the State can avoid the Federal - - the existence of the Federal obligation to represent all members of a bargaining unit fairly and then the Right-to-Work law allowing some people - -
>
> JUSTICE RUCKER: I guess my point is - - I guess my point is, is it a difference between it makes the union - - it makes it more difficult for the union because the employee does not have to - - does not have to negotiate with the members only and is not protected by the National Labor Relations Act, but does that prevent - - it makes it more difficult, but the question is does it prevent the unions from representing a members only - - having a members-only representation?
>
> MR. PIERSON: Yes, your Honor, the law does not allow members-only representation, that's the bottom line, that is not an option.

(DE # 7-1 at 7-8.)

The Indiana Supreme Court ultimately rejected this argument. "The Union's federal obligation to represent all employees in a bargaining unit is optional; it occurs only when the union elects to be the exclusive bargaining agent, for which it is justly compensated by the right to bargain exclusively with the employer." *Zoeller*, 19 N.E.3d at 753.

After Pierson's oral argument, Greer wrote, and NILRR published, an online article characterizing Pierson's argument. The article stated the following:

> **Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court**
>
> Currently, the top bosses of two unions, the United Steelworkers (USW) and Local 150 of the International Union of Operating Engineers (IUOE), have cases before the Indiana Supreme Court in which they are trying to get Right to Work protections for Hoosier employees approved by state legislators two-and-a-half years ago judicially overturned.

4

In a petition filed with the National Labor Relations Board seven years ago, lawyers for one of these two unions, the USW, acknowledged without qualification that, under Section 7 of the National Labor Relations Act (NLRA), in any workplace where no union is recognized as employees' "exclusive" bargaining agent, employees' right to bargain with their employer through a union "remain[s] available and protected, though on a nonexclusive basis, thus applicable to union members only."

As anyone who has a good understanding of federal labor statutes and court precedents knows, the union lawyers for the USW brass, along with the officers of six other AFL-CIO-affiliated unions who signed on to the petition ("In the Matter of Rulemaking Regarding Members-Only Minority-Union Collective Bargaining"), were absolutely correct about the permissibility of members-only bargaining in 2007. And they are still correct today.

How can it be, then, that Dale Pierson, the top lawyer for the other union seeking to overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials' representing only those who join and pay dues "is not a legal possibility"? (A video of the oral arguments in which Pierson claimed again and again that "the law does not allow members-only representation" is available at the end of the link below.)

The answer is, quite simply, that Pierson flat-out lied. Evidently, he and the other IUOE bosses for whom he is working agree that, if the Indiana Supreme Court acknowledges the truth about the permissibility of members-only bargaining as an alternative to monopoly bargaining for union officials, their anti-Right to Work case must fail. And therefore last week Pierson simply denied a truth that even his fellow assailants on Indiana's Right to Work law, the USW union hierarchy, have openly acknowledged in public legal documents.

Because Thomas Fisher, the lead attorney representing Indiana as it defends its Right to Work law from the IUOE Local 150 brass, knows full well about the U.S. Supreme Court precedents, such as the 1938 Consolidated Edison v. NLRB ruling, that explicitly affirm that members-only bargaining is legal under the NLRA, and reminded the Indiana Supreme Court justices about them, it is unlikely that Pierson and his paymasters are going to get away with lying about federal labor law. But the fact that Pierson was willing to do it, and IUOE Local 150 kingpins

> were evidently willing to sign off on such a strategy, illustrates just how desperate they are to reinstate forced union dues and fees in Indiana.

(DE # 7-2 at 1.)

Pierson subsequently filed the present lawsuit, alleging that the statements in the article constitute defamation *per se*. (DE # 1.) According to Pierson, defendants made and published these statements knowing them to be false. (*Id.* at 4.)

Defendants now move to dismiss Pierson's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (DE # 6.) Defendants argue: (i) the statements were not defamatory *per se*; (ii) the statements in the article were substantially true, and are therefore not defamatory; (iii) the statements were opinion or rhetorical hyperbole, and are therefore not defamatory; (iv) Pierson failed to plead special damages; (v) Pierson failed to plead actual malice; (vi) the statements were protected by the qualified common interest privilege; and (vii) Pierson's complaint violates Indiana's Anti-SLAPP statute. (DE # 7.)

## II. LEGAL STANDARD

A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

6

8(a)(2). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**III. ANALYSIS**

To establish a claim of defamation, a "plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'" *Trail v. Boys & Girls Clubs of N.W. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006) (internal citation omitted). A statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (internal citation omitted). "Any statement actionable for defamation must not only be defamatory in nature, but also false." *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014).

"One type of defamation action, defamation *per se*, arises when the language of a statement, without reference to extrinsic evidence, constitutes an imputation of misconduct in a person's trade, profession, office, or occupation." *Charles v. Vest*, 90 N.E.3d 667, 671 (Ind. Ct. App. 2017). To establish defamation *per se*, "it is not enough that the statement carry with it one of those four defamatory imputations; rather, it must "constitute 'a serious charge of incapacity or misconduct in words so obviously and naturally harmful that proof of their injurious character can be dispensed with.'" *In*

*re Indiana Newspapers Inc.*, 963 N.E.2d 534, 549–50 (Ind. Ct. App. 2012) (internal citation omitted).

    A.    *Defamation* Per Se

Defendants maintain that, under Indiana law, calling someone a "liar" is not, by itself, defamation *per se*. (DE # 7 at 12; DE # 14 at 1.) Defendants argue that *Levee v. Beeching*, 729 N.E.2d 215 (Ind. Ct. App. 2000) is both directly on point and controlling. (DE # 14 at 1.) This court disagrees.

In *Levee*, a school principal brought a defamation action against the leader of the local teacher's union after the union leader publically accused the principal of being a "liar" and stated that she "favored some staff." *Id.* at 219. The Court of Appeals of Indiana affirmed the trial court's holding that these statements did not amount to defamation *per se*. *Id.* at 220. The Court of Appeals found that although the statements had a defamatory imputation, they "were not 'so obviously and naturally harmful that proof of their injurious character can be dispensed with.'" *Id.* (*quoting Moore v. University of Notre Dame*, 968 F.Supp. 1330, 1334 (N.D. Ind. 1997)). Rather, the union leader's remarks only acquired a defamatory meaning when considered in the context of the union leader's pattern of personal attacks against the principal. *Id.*

*Levee* is distinguishable. Contrary to defendants' assertions, *Levee* did not hold that calling someone a "liar" never amounts to defamation *per se*. Rather, the court held that, in the specific case before it, the remarks were only defamatory when considered in context. The same is not true in this case. Here, defendants' article accused Pierson of

8

intentionally lying to the Indiana Supreme Court. The defamatory nature of defendants' statements can be assessed on the face of the statements, without any additional context or information.

Moreover, unlike in *Levee*, defendants' accusations that Pierson "flat-out lied" to the Indiana Supreme Court clearly charge Pierson of professional misconduct. Chief among a lawyer's duties is his or her duty of candor to the Courts. Defendants' article impugns Pierson's professional reputation by accusing him of violating his ethical obligations as an officer of the court. As the Seventh Circuit has noted, "sometimes personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se*." *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008). Thus, Pierson's complaint sufficiently alleges defamation *per se* and defendants' motion to dismiss on this ground is denied.

    *B.    Substantial Truth*

Defendants assert that Pierson's complaint fails to state a claim because the statements in the article were substantially true. Substantial truth can be a defense to defamation. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f the gist of a defamatory statement is true, if in other words the statement is substantially true, error in detail is not actionable."); *Heeb v. Smith*, 613 N.E.2d 416, 421 (Ind. Ct. App. 1993) ("Under the Constitution, literal truth is not required; it is sufficient if the statement is substantially true."). Here, however, defendants do not actually make a substantive argument that their assertions that Pierson lied to the Indiana Supreme

Court were substantially true. Rather, after a one-sentence conclusory statement, they turned their focus to two unrelated propositions.

First, defendants attempt to create distance between the accusations in their article and Pierson individually. Defendants argue that the statements in the article were not *really* about Pierson, but were instead directed at "pointing out an inconsistent position that has been maintained by Unions in their various advocacy efforts." (DE # 7 at 7.) They claim that their accusation that Pierson lied merely "highlighted the irritation Greer felt at the blatantly contradictory positions maintained by the Unions." (*Id.* at 9.) "[T]he 'lies' or 'untruth' comments are not directed at plaintiff the individual, but rather at the legal 'strategy' of those who benefit from the position. . . ." (*Id.* at 8.)

Defendants' intent aside, the article expressly accused Pierson, by name, of lying to the Indiana Supreme Court. Whether defendants intended to accuse Pierson, individually, of lying to the Indiana Supreme Court, or whether they intended to accuse Pierson of lying as part of a legal strategy on behalf of his union client, the question remains whether it is substantially true that Pierson lied at all. Defendants leave this question unanswered.

Second, defendants argue that Pierson "cannot deny that legal precedent does not bolster the position he took during the oral hearing. Indeed, even the Indiana Supreme Court expressly questioned and disagreed with plaintiff's statement made at oral argument regarding the legal impossibility. Further, case law calls into question plaintiff's statements made to the Indiana Supreme Court." (DE # 7 at 8-9 (internal

citation to *Zoeller* omitted).) Defendants do not, however, actually cite to such case law. Moreover, the fact that the Indiana Supreme Court subsequently rejected Pierson's position in its written decision is not evidence that Pierson lied when he made the statements during oral argument.

Defendants have failed to identify any legal support for their position that Pierson lied when he told the Indiana Supreme Court that members-only unions are a legal impossibility. Therefore, their motion to dismiss based on the substantial truth of their statements is denied.

C. *Rhetorical Hyperbole and Opinion*

Defendants argue that Pierson's complaint fails to state a claim because the statements were constitutionally protected opinion and/or rhetorical hyperbole. (DE # 7 at 9.) According to defendants, "Greer's declaration that the plaintiff, at the bequest of the Union, 'lied' or 'denied a truth' is not a fact or a personal criticism, but rather an outpouring of exasperation and intellectual outrage directed at the clearly contradictory positions taken by – not plaintiff – but rather the Unions at the oral argument and in the previously filed 2007 petition." (DE # 7 at 11.)

Rhetorical hyperbole is a well-recognized category of "privileged defamation." *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996). Rhetorical hyperbole "consists of terms that are either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions; and in the latter case the issue dissolves into whether those assertions are defamatory." *Id.* For example, "[i]f you say simply

11

that a person is a 'rat,' you are not saying something definite enough to allow a jury to determine whether what you are saying is true or false. If you say he is a rat because . . . , whether you are defaming him depends on what you say in the because clause." *Id.*

The Seventh Circuit has held that terms and phrases such as "scab," "traitor," "amoral," "scam," "fake," "phony," "a snake-oil job," "dealing with half a deck," and "lazy, stupid, crap-shooting, chicken-stealing idiot" are "incapable of defaming because they are mere hyperbole rather than falsifiable assertions of discreditable fact." *Id.* at 10. The Court noted that "[e]ach of the terms has both a literal and a figurative meaning and whether it is capable of being defamatory depends on which meaning is intended, a question that can be answered only by considering the context in which the term appears." *Id.*

Opinions, too, are sometimes determined to be outside the reach of a defamation claim. An opinion is not actionable if it does not contain any provably false factual assertions. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, n. 7 (1990). However, the Supreme Court has explicitly rejected the "creation of an artificial dichotomy between 'opinion' and fact." *Id.* at 19.

In *Milkovich*, the Supreme Court considered whether a statement published in a newspaper that accused a high school wrestling coach of lying under oath was a constitutionally protected opinion. The Court explained that a statement accusing another person of lying, or being a liar, is not a constitutionally protected opinion because the underlying factual connotations could be proven false. *Id.* at 20. Such a

12

statement could be proven false by establishing either (i) that the speaker did not believe that the person lied, and said it anyway; or (ii) by establishing that the person did not lie. *Id.* at n. 7. The Court held that a reasonable fact-finder could determine that the statements in the article implied that the wrestling coach committed perjury and did not use the sort of loose, figurative, or hyperbolic language that would negate the impression that the defendant's accusation was serious. *Id.* at 21. The Court held that an accusation of perjury was sufficiently factual that it was susceptible of being proven true or false, and thus was not a constitutionally protected opinion. *Id.*

Here, like in *Milkovich*, defendants accused Pierson of lying to a court. And, as in *Milkovich*, such accusations are neither constitutionally protected opinion nor rhetorical hyperbole because they are capable of being proven false. *Id; compare with, Sullivan v. Conway*, 157 F.3d 1092, 1097 (7th Cir. 1998) (applying Illinois law) (statement that plaintiff was "a very poor lawyer" was not actionable; "It is one thing to say that a lawyer is dishonest . . . . These are all readily verifiable statements of fact. But to say that he is a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury").

Defendants do not address *Milkovich*, and instead cite to *Shepard v. Schurz Commc'ns, Inc.*, 847 N.E.2d 219 (Ind. Ct. App. 2006) in support of their proposition that "Indiana courts have consistently found statements such as the one at issue rhetorical hyperbole and, as such, non actionable." (DE # 7 at 10.) In *Shepard*, a local newspaper published a quote from the town attorney stating that a second attorney "is a liar" and

13

accusing the second attorney of making a false statement regarding the town attorney. *Id.* at 222. The Indiana Court of Appeals granted the newspaper's motion to dismiss on the basis that the newspaper "merely reported statements that were essentially rhetorical hyperbole by an opposing attorney, statements incapable of being proved true or false by the Times." *Id.* at 226. However, *Shepard* is distinguishable from the case at bar because – unlike *Shepard* where the newspaper defendant merely reported the statements – here defendants were responsible for making the statements. What defendants fail to acknowledge is that, although the Court of Appeals granted the newspaper's motion to dismiss, it denied the motion to dismiss filed by the town attorney, the person responsible for making the allegedly defamatory statement.

Pierson's complaint challenges statements that are capable of being proven false. Thus, defendants' motion to dismiss on the basis that their statements were protected opinion or hyperbole is denied.

    D.    *Special Damages*

Defamation is either *per se* or *per quod*. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013). In actions for defamation *per se* damages are presumed. *Dugan v. Mittal Steel USA*, Inc., 929 N.E.2d 184, 186 (Ind. 2010).

Defendants argue that Pierson failed to state a claim for defamation *per se*, and thus was required to plead special damages in order to maintain an action for defamation *per quod*. (DE # 7 at 12.) They also claim that Pierson failed to plead special damages, and thus has failed to state a claim for defamation *per quod*. (*Id.*) Under

Indiana law, special damages are "damages that are pecuniary in nature and that have been actually incurred as a natural and proximate consequence of the wrongful act." *Martino*, 715 F.3d at 206 (internal citation omitted).

To begin, Pierson identifies his claim as a claim of defamation *per se*. Thus, defendants' argument fails at the start because – as noted in a previous section – Pierson's complaint sufficiently states a claim for defamation *per se*.

However, even under a defamation *per quod* claim, Pierson would not be required to specifically identify and plead special damages. Under the federal notice pleading standard, Pierson was merely required to allege facts sufficient to support a plausible inference that he sustained special damages; he need not have specifically identified what damages he sustained. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (Rule 8 does not call for the pleading of all facts required to prevail); *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("[I]t is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each."). Pierson's complaint alleges that defendants' statements prejudiced, and continue to prejudice, Pierson in his profession, reputation, and trade. (DE # 1 at 5.) These allegations support a plausible inference that he sustained special damages.

Pierson's complaint sufficiently states a claim for both defamation *per se* and defamation *per quod*. Therefore, defendants' motion to dismiss for failure to plead special damages is denied.

E.  *Actual Malice.*

Defendants argue that Pierson's complaint failed to state a claim because he failed to plead actual malice. Defendants argue that the actual malice standard applies in this case because their statements were made in reference to (1) a matter of public concern; and (2) a public figure.

"Indiana has adopted an 'actual malice' standard in defamation for both private and public plaintiffs in matters of public concern." *In re Indiana Newspapers Inc.*, 963 N.E.2d at 550. A statement is made with actual malice where it was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see also McQueen v. Fayette Cty. Sch. Corp.*, 711 N.E.2d 62, 64–68 (Ind. Ct. App. 1999).

"[A]ctual malice does not hinge on whether Defendant's claims are true or false, nor even whether they are objectively reasonable. Instead, it is a matter of his subjective sincerity—whether he 'in fact entertained serious doubts as to the truth of' those statements, or had a 'high degree of awareness of their probable falsity,' even if he was motivated by ill will." *Brewington v. State*, 7 N.E.3d 946, 960 (Ind. 2014) (internal citations omitted).

To the extent that Pierson was required to plead actual malice because either (1) defendants' statements addressed a matter of public concern, or (2) Pierson is a public figure, he has done so. In his complaint, Pierson alleges that defendants "made the statements and published them knowing that they were false" and "with knowledge of

their falsity or reckless disregard for their truth." (DE # 1 at 4.) This is sufficient under the federal notice pleading standard.

F. *Qualified Common Interest Privilege*

Defendants' final argument is that Pierson's complaint fails to state a claim because the statements in the article were protected by the qualified common interest privilege. This privilege serves as a defense against defamation and protects "'communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty.'" *Trail*, 845 N.E.2d at 136 (internal citation omitted). The privilege "protects communication made in connection with membership qualifications, employment references, intracompany communications, and the extension of credit." *Kelley*, 865 N.E.2d at 597-98 (internal citations omitted). "The privilege arises out of the necessity for full and unrestricted communication on matters in which the parties have a common interest or duty." *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 338–49 (Ind. Ct. App. 2016), *transfer denied sub nom. McCollugh v. Noblesville Sch.*, 80 N.E.3d 181 (Ind. 2017).

The common interest privilege may be overcome if "the plaintiff demonstrates an abuse of the privilege. A claimant can do this by proving an absence of good faith, or excessive publication, or that the statement was made without belief or grounds for belief in its truth." *Trail*, 845 N.E.2d at 136. "Unless only one conclusion can be drawn

from the evidence, the question of whether the privilege has been abused is for the jury." *Kelley*, 865 N.E.2d at 601.

Defendants broadly assert that because "[t]he posting at issue clearly speaks to a matter of public issue, in which author Greer and his organization had an invested interest . . . . The qualified privilege is applicable." (DE # 7 at 15.) This is a misstatement of the law. It is not sufficient that both parties merely have an interest in a subject; the parties must share the *same* interest, and the interest must be one that is recognized as invoking the privilege. *See Kelley v. Tanoos*, 865 N.E.2d 593 (Ind. 2007).

In *Kelley*, a school superintendent was shot and the police initially suspected that the plaintiff was responsible. *Id.* at 595. The superintendent spoke to the plaintiff's employer, the director of a juvenile residential treatment facility, and told plaintiff's employer that both he and the police were convinced that plaintiff was the gunman. *Id.* at 596. However, the plaintiff was never charged. *Id.* When the plaintiff subsequently sued the superintendent for defamation, the superintendent claimed that his statements were protected by the common interest privilege. The superintendent argued that he and the plaintiff's employer, as executives in partnered education institutions, shared a common interest "in discerning the potentially violent propensities of an individual guarding school-age Vigo County community children. . . ." *Id.* at 598.

The Supreme Court of Indiana rejected the superintendent's common interest privilege argument. *Id.* The Court held that the common interest privilege did not apply because the superintendent and the plaintiff's employer did not have a "sufficiently

18

concurrent" interest. *Id.* The Court held that the parties' general interest in protecting the community's school children from a suspected attempted murderer was insufficient to invoke the privilege. *Id.* at 598-99. The Court stated that to hold otherwise would inappropriately expand the privilege. *Id.* at 599.

As in *Kelley*, in this case defendants do not have a sufficiently concurrent interest with, or duty to, the general public, and therefore the common interest privilege does not apply. The fact that both parties are concerned with legislation regulating unions is not sufficient to grant privilege to whatever they choose say regarding the subject, as defendants suggest. *See also McCollough*, 63 N.E.3d at 338–49 (common interest privilege did not apply to school district's press release regarding aggressive incident between school's basketball coach and a student because there was no corresponding interest or duty between school district and general public).

Defendants also do not have the type of duty that would give rise to the qualified privilege. The privilege "protects communication made in connection with membership qualifications, employment references, intracompany communications, and the extension of credit" *Kelley*, 865 N.E.2d at 597-98 (internal citations omitted). This is not the relationship between defendants and the general public, for whom the article was published.

For these reasons, defendants' motion to dismiss based on the qualified common interest privilege is denied.

G.  *Indiana Anti-SLAPP Statute*

Defendants seek attorney's fees pursuant to Indiana code § 34-7-7-2 *et seq.*, commonly known also as the State's anti-SLAPP law, or law against Strategic Litigation Against Public Participation. (DE # 7 at 15-16.) This statute provides that a "prevailing defendant on a motion to dismiss made under this chapter is entitled to recover reasonable attorney's fees," Ind. Code § 34–7–7–7; *see also Hamilton v. Prewett*, 860 N.E.2d 1234, 1247 (Ind. Ct. App. 2007). However, at this time, there is no "prevailing defendant" and thus the statute is inapplicable.

**IV.  CONCLUSION**

For these reasons, the court **DENIES** defendants' motion to dismiss (DE # 6).

**SO ORDERED.**

Date: March 25, 2018

                                        s/James T. Moody
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT